UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ERIC DUANE ANDERSON,<br><br>Plaintiff,<br><br>v.<br><br>STATE OF WASHINGTON DEPARTMENT OF HEALTH, and STATE OF WASHINGTON DEPARTMENT OF PERSONNEL,<br><br>Defendants. | Case No. C04-5684FDB<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT and PLAINTIFF'S MOTION TO SEAL |

**INTRODUCTION**

Plaintiff filed an "Amended Complaint for Fraud, Employment Discrimination, and Violations of The Americans with Disabilities Act (ADA)" wherein he states that he is a person "with a history of bipolar disorder" and alleges that "the State of Washington Department of Personnel solicited the plaintiff's disability status under false pretences [sic], and with false assurances of confidentiality ... ." Plaintiff contends that the solicitation is a violation of the ADA as well as other Federal and Washington States laws. Plaintiff also alleges that the disability information that he submitted was used to conduct a biased interview, and that the employment interview panel "asked questions relative to perceived stereotypical behavior of the plaintiffs [sic] disability, bipolar disorder." Plaintiff

ORDER - 1

further alleges that, "The Department of Health destroyed records of plaintiffs interview that were requested by the EEOC in an effort to conceal discriminatory behavior." [sic] Plaintiff further alleges that the defendant agencies continue to violate State and Federal laws with respect to Plaintiff's interviews and applications for other positions within other State agencies. Plaintiff alleges that the State "is fraudulent in its assertions and promises of confidentiality to secure disability information." Plaintiff seeks declaratory and injunctive relief with respect to the alleged State practices, and seeks damages as well.

Defendants move for summary judgment arguing that Plaintiff voluntarily disclosed his medical condition and that neither the affirmative action form nor interview Question # 7 required such a disclosure; that Plaintiff cannot prove a prima facie case of discrimination for failing to hire or in pre-hiring employment practices; that Plaintiff has not established that he has a disability under the ADA; that the State has revised its application screening process and the injunctive relief requested is moot; the EEOC determined that the State did not fail to hire Plaintiff because of the disability he claims; Plaintiff was not the best qualified candidate for the position of Laboratory Helper; and that Plaintiff cannot prove that the State's actions proximately caused him any damages.

**FACTUAL BACKGROUND**

In his Declaration, Gene Matt, Director of the Department of Personnel during the relevant time period, sets forth and explains the centralized recruitment and selection services the Department provides for state agencies to fill civil service positions. Pursuant to both State and Federal law, the State must meet certain affirmative action goals, and, therefore, must identify the number of male and female incumbents in each of the affirmative action affected groups. The "invitation to self-identify" is set forth in Exhibit 4 to Gene Matt's Declaration. Plaintiff's application was reviewed for completeness by the Department of Personnel and to determine whether he was qualified for the position, which it found he was. A separate three-page questionnaire seeks affirmative action information and Plaintiff's questionnaire is attached to Gene Matt's Declaration at Exhibit 7. The

ORDER - 2

questionnaire states at the top:

> To ensure equal employment opportunity, we ask your voluntary cooperation in responding to the questions below. This information will be treated as confidential, and will be available only to authorized personnel. Please review the Affirmative Action definitions at the bottom of the page.

The optional information sought includes information related to disabilities. Plaintiff responded to question No. 4, which required only that Plaintiff check a box either yes or no and which asked:

> Do you have a physical, sensory, or mental condition that substantially limits any of your major life functions, such as working, caring for yourself, walking, doing things with your hands, seeing, hearing, speaking, learning?

Gene Matt states that Plaintiff answered this question "yes" and also wrote in the words "bipolar disorder" next to the words "*Please see the definition of 'disabilities' below.*" (Matt Decl. Ex. 7, 01050005.)

Gene Matt explains that once the application is screened and scored, the information is placed in the Department of Personnel's Automated Register Maintenance Systems (ARMS). In Plaintiff's case, however, the information was entered incorrectly and Plaintiff's status as a person with a disability did not appear on the register (the designation is noted as "plus 3" (or +3) candidate). (Matt Decl. ¶ 17; Ex. 8, 01070002.) Additionally, Gene Matt explains that access to online ARMS information "is limited to only authorized human resource personnel within each agency. The online screens are limited in terms of what information is available. Agencies do not have direct access to applicant's personal demographic and affirmative action information." (*Id.* Ex. 8, p. 19, 01070003.)

Lain Knowles, Department of Health Operations Manager, states in his Declaration that on April 19, 2004, he and two other Department of Health employees conducted interviews of eligible candidates for the Laboratory Helper position and that these candidates were listed in the employment register provided by the Department of Personnel. (Knowles Decl. ¶¶ 1 & 2.) All candidates referred from the state register for the Laboratory Helper position scored from 100-110 percent, including Plaintiff Eric Anderson who scored 100. (*Id.* ¶ 2; Matt Decl. Ex. 7, 01050009.)

ORDER - 3

Knowles randomly selected six candidates for an interview. (Knowles Decl. Ex. 4, 01040039.) Each candidate was asked to bring to the interview a resume (if available), a state application, and three references. (*Id.*) Margaret Hoff, Senior Secretary with the Department of Health contacted the candidates who were chosen to be interviewed, and asked them to bring to the interview a resume and/or the state application as well as three references, and she states that she did not ask them to bring the Affirmative Action form with them to the interview. (Hoff Decl.)

Defendants contend that Anderson brought his Affirmative Action form with him to the interview. Secretary Hoff does not state one way or another whether Anderson brought the Affirmative Action form with him. Knowles states that he does not independently recall seeing Anderson's application or the Affirmative Action form. Elizabeth Woody, an employee who was on the interview panel states that she does independently recall Anderson's interview, was impressed with him, did not consider the information contained in the Affirmative Action form, and ranked him first among the competitors. (Woody Decl.) Melanie Panoke independently recalls Anderson, was impressed with his qualifications and presentation as well, but noted that "he did not have much in the way of microbiology background," and she did not recall seeing anything about a disability in his application package, and she recalls that when he was asked Question No. 7, "he voluntarily stated that he had Bi-Polar Disorder. I did not know what that term meant." (Panoke Decl.) Panoke ranked Anderson second among the competitors. (*Id.*)

The panel developed a series of questions that were used to interview each of the candidates. (Knowles Decl. Ex. 4.) Question No. 7 asked:

> The hours for this position are Monday to Friday, 8:00 am until 5:00 pm. You may be required to lift packages up to 40 pounds and may have to stand for extended periods. You also will be handling biological and environmental specimens. Do you have any problems that would not allow you to meet perform these duties or concerns about these job requirements.

(Knowles Decl. Ex. 3, 01040034.)

When they arrived for the interview, each candidate was given a copy of the job description

ORDER - 4

1  to review and copies of their application and resume were made for each panelist to review prior to

2  the interview beginning. (*Id.*) At the conclusion of the each interview, the panelists scored the

3  candidates. (*Id.*) At the conclusion of all the interviews, the panelists combined their scores and the

4  top three candidates were ranked in order of knowledge, background, and skills. (*Id.*) Having

5  decided on the top two candidates, the top candidates references would be checked, and only if

6  something detrimental turned up would the second candidate's references be checked. (*Id.*)

7  Knowles states that at the time of the interview, "it was my policy to keep all of the applications and

8  test related documents until I was sure the successful applicant would continue in the position at

9  which time I destroyed the documents associated with the unsuccessful candidates." (Knowles Decl.

10 ¶ 5.)

11 On June 14, 2004, Anderson filed a charge with the Equal Employment Opportunity

12 Commission. On July 29, 2004 the EEOC closed its case, but pursuant to a request for

13 reconsideration and submission of additional information from Anderson, the notice of right to sue

14 was rescinded and the charge reopened. (Shively Decl. Ex. 4.) The EEOC wrote a determination

15 letter to the Department of Health on November 3, 2004 wherein it stated:

16 > During the investigation, all relevant, available documents were reviewed. I have
> considered all the evidence disclosed during the investigation and have determined
17 > that there is insufficient evidence to show that the Respondent failed to hire the
> Charging Party based on his disability status. There is reasonable cause to believe
18 > that the Respondent improperly disclosed the Charging Party's medical status when it
> allowed the confidential affirmative action form to be reviewed by interviewing and
19 > selecting officials during the selection process.

20 (Shively Decl. Ex. 5.) On December 9, 2004, Roxanna M. Shively, Human Resource Consultant

21 with the Department of Health responded to the Enforcement Supervisor of the EEOC that the

22 Department of Health had implemented a new application screening process that screens and

23 removes confidential information from an application before the documents are reviewed by the

24 hiring supervisor. (Shively Decl. Ex. 6.)

25 **SUMMARY JUDGMENT STANDARD**

26 ORDER - 5

1    Summary judgment is proper if the moving party establishes that there are no genuine issues
2 of material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). If the moving
3 party shows that there are no genuine issues of material fact, the non-moving party must go beyond
4 the pleadings and designate facts showing an issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317,
5 322-323 (1986). Inferences drawn from the facts are viewed in favor of the non-moving party. *T.W.*
6 *Elec. Service v. Pacific Elec. Contractors,* 809 F.2d 626, 630-31 (9th Cir. 1987).

7    Summary judgment is proper if a defendant shows that there is no evidence supporting an
8 element essential to a plaintiff's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Failure of
9 proof as to any essential element of plaintiff's claims means that no genuine issue of material fact can
10 exist and summary judgment is mandated. *Celotex*, 477 U.S. 317, 322-23 (1986). The nonmoving
11 party "must do more than show there is some metaphysical doubt as to the material facts."
12 *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## APPLICABLE LAW

14    To demonstrate a *prima facie* case of disability discrimination under the ADA, a plaintiff
15 must show: (1) he is disabled within the meaning of the ADA; (2) he is a qualified individual able to
16 perform the essential functions of the job, with or without accommodations; and (3) the defendant
17 did not hire him because of his disability. *Nunes v. Wal-Mart Stores, Inc.*, 164 F3d 1243, 1246 (9th
18 Cir. 1999).

19    Under Washington's anti-discrimination law, a plaintiff must show: (1) membership in a
20 protected class; (2) he is qualified for the employment position; (3) an adverse employment decision;
21 and (4) selection by the employer of a different person from outside the protected class. RCW
22 49.60.180; *Riehl v. Foodmaker*, 152 Wn.2d 138, 149, 94 P.3d 930 (2004).

23    Once a plaintiff establishes a *prima facie* case of disability discrimination, the employer must
24 produce evidence that its action was based upon "legitimate, non-discriminatory reasons" in order to
25 rebut the presumption of discrimination. *Riehl*, 152 Wn.2d at 150. *Snead v. Metropolitan Property*

ORDER - 6

*& Casualty Ins. Co.*, 237 F.3d 1080, 1092 (9th Cir. 2001).  Once an employer proffers a reason, a plaintiff then has the opportunity to prove that the defendant's reason is a pretext.  *Carle v. McChord Credit Union*, 65 Wn. App. 93, 101, 827 P.2d 1070 (1992).  A plaintiff can show pretext in two ways: "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."  *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981).  A "plaintiff can survive summary judgment without producing any evidence of discrimination beyond that constituting her *prima facie* case, if that evidence raises a genuine issue of material fact regarding the truth of the employer's proffered reasons."  *Snead*, 237 F.3d at 1094.

Under the ADA, a person is "disabled" if he or she has a "physical or mental impairment that substantially limits one or more of the major life activities."  42 U.S.C. § 12102(2)(A); *Sutton v. United Air Lines, Inc.* 527 U.S. 471, 482 (1999).  While Ninth Circuit precedent does not require comparative or medical evidence to establish a genuine issue of material fact regarding the impairment of a major life activity at the summary judgment stage, that a plaintiff's testimony may suffice, the Ninth Circuit stated in *Head v. Glacier Northwest, Inc.*, 413 F.3d 1053 1059 (9th Cir. 1005):

> We hasten to add that our holding in no way impugns our longstanding precedent that conclusory declarations are insufficient to raise a question of material fact.  To survive summary judgment, an affidavit supporting the existence of a disability must not be merely self-serving and must contain sufficient detail to convey the existence of an impairment.

*Id.* at 1059.  Bipolar disorder may render one "disabled" under the ADA if the disorder substantially limits one or more of the major life activities.  *See Head* at 1057, 1059 and *Taylor v. Phoenixville School Dist.*. 184 F.3d 296, 306 (3rd Cir. 1999).

Under state law, a disability is "a sensory, mental, or physical abnormality that substantially limits the ability to perform the job."  *Pulcino v. Federal Express Corp.*, 141 Wn.2d 629, 641-42, 9 P.3d 787 (2000).  To establish the existence of a disability, the plaintiff may present "evidence of a

ORDER - 7

condition that is medically cognizable or diagnosable, or that exists as a record or history." *Pulcino*, 141 Wn.2d at 641. Medical testimony or documentation is not required, and a plaintiff may present evidence of an "abnormality" that interferes with his or her ability to perform the job, based solely upon his or her affidavit. *Id.* 642-43.

## DISCUSSION

The elements of Plaintiff's *prima facie* case will be discussed in turn. Plaintiff Anderson's Sealed Declaration [Dkt. # 90] sufficiently establishes for purposes of this summary judgment motion that his bipolar disorder substantially affects his sleep and physical balance. Sleep has been held to be a major life activity. *Head*, 413 F.3d at 1060. The need for sufficient time off to go to medical appointments or for leave of absences during episodes of mania or severe depression (Anderson Decl.) may substantially limit his ability to perform the job. Plaintiff has demonstrated that he has a disability under the ADA and the WLAD sufficient for this summary judgment motion. There is no dispute that Plaintiff is a qualified individual able to perform the essential functions of the job, with or without accommodations, because he was rated number two among the six individuals interviewed.

The remaining issue is a showing, under the ADA, that Anderson was not hired because of his disability, and under the WLAD that the Health Department selected a different person from outside the protected class.

Defendants argue that at the time of the hiring decision the panel of interviewers did not know the nature or extent of any disability the Plaintiff may have had. No panel member except Elizabeth Woody recalls the Affirmative Action form, and she states she did not consider the information and ranked Anderson first among the competitors interviewed. Melanie Panoke recalls Anderson and while she did not recall seeing anything about a disability in his application package, she recalls that in responding to Question No. 7, he said he had bipolar disorder, but that she did not know what the term meant. Anderson, however, disputes that he said he had bipolar disorder at the

ORDER - 8

interview, and he contends that Question No. 7 seemed designed to elicit information about his disability.

On the contrary, Question No. 7 frames the job's requirements: the hours or work, the lifting requirements, and the fact that biological and environmental specimens will be handled. The question then goes on to inquire whether the candidate can perform these functions. The ADA allows employers to inquire during the pre-employment process about an applicant's ability to perform essential job functions, and the EEOC's guidelines state in pertinent part:

> Q. May an employer ask whether an applicant can perform the job?
> A. Yes. An employer may ask whether applicants can perform any or all job functions, including whether applicants can perform job functions "with or without reasonable accommodation."
> Q. May an employer ask applicants to describe or demonstrate how they would perform the job (including any needed reasonable accommodations)?
> A. Yes. An employer may ask applicants to describe how they would perform any or all job functions, as long as all applicants in the job category are asked to do this.

ADA Enforcement Guidance: Pre-employment Disability-Related Questions and Mediation Examinations, EEOC Notice Number 915.002 dated October 10, 1995. *See* Mark Anderson Decl. Ex. 5, pp. 26, 27, 32. The guidelines go on to state that an employer may ask individuals with disabilities to self-identify if they are undertaking affirmative action pursuant to laws that require such or if the employer is doing so voluntarily. *Id.*

Plaintiff Anderson has failed to demonstrate that the Department of Health did not hire him because of his disability. A scintilla of evidence, or that which is merely colorable and not significantly probative, does not present a genuine issue of material fact. *United Steelworkers of America v. Phelps Dodge*, 865 F.2d 1539, 1542 (9th Cir. 1989), *cert. denied,* 493 U.S. 809 (1989). Anderson argues that he has shown "pretext" because the Defendants' claim that he ranked second is simply a conclusion without any basis set forth and that Defendants did not even check his references. Anderson's argument does not amount to a rebuttal of the Defendants' showing because it is simply his sense of what happened. Subjective beliefs do not prove pretext. *Aragon v. Republic*

ORDER - 9

*Silver State Disposal, Inc.*, 292 F.3d 654, 661-64 (9th Cir. 2002).  Additionally, as interview panel member Panoke recalls, "he did not have much in the way of microbiology background."  Plaintiff presented well in the interview according to two panel participants, one of whom ranked him number one.  He ranked second out of the six people interviewed, and his references would only be checked if something in the number-one ranked individual's references generated a concern.  Moreover, because the Department of Personnel had not designated Anderson's application in the ARMS system as a person with a disability, and because agencies cannot access the confidential information in the ARMS system, the Department of Personnel did not disclose Anderson's confidential information to the Department of Health.  Plaintiff was not required to bring his affirmative action forms to the interview.  Procedures are now in place to foreclose these forms from being included in an interviewee's application package to be provided to the interviewers.

There is no genuine issue of material fact presented in this case, and Defendants are entitled to judgment as a matter of law.

NOW, THEREFORE, IT IS ORDERED:

1. Defendants' Motion for Summary Judgment [Dkt. # 78] is GRANTED, and this cause of action is DISMISSED.

2. Plaintiff's Motion To Seal [Dkt. # 89] is unopposed and is GRANTED.

DATED this 20th day of April, 2006.

FRANKLIN D. BURGESS
UNITED STATES DISTRICT JUDGE

ORDER - 10